B. C. Wood, *as Administrator of the Estate of L. R. Staudenmayer, sr., deceased,* v. L. R. Stauden-mayer, jr., *et al.*

No. 8071.

1. Case-Made— *Written Waiver of Summons, Lost.* In a proceeding in error, a case-made for the supreme court was served upon one of the defendants, who executed a written waiver of summons and an entry of appearance in the supreme court, which were delivered to the plaintiff in error, but in some unaccountable way were afterward lost. *Held,* That the defendant was a party to the proceeding in error.

2. Review— *not a Necessary Party.* A person who is not a party to an action in the trial court is not a necessary party to a review of the case in an appellate court, even if the trial court in rendering a judgment may have awarded affirmative relief to such person.

3. Fraud— *Land Contract— Rescission.* A rescission of the contract for the purchase of land and the cancellation of the conveyances, on the ground that the representations of the vendor were false and fraudulent, is an extraordinary power of equity, and should not be exercised unless it is clearly established that the representations were false or fraudulent, and that they were relied on by the purchaser ; and the right to disaffirm the contract must be exercised promptly after the discovery of the fraud.

4. ——— *Findings, not Sustained.* The testimony examined, and, in respect to the contract in question, it is *held,* that the testimony fails to sustain the finding that the contract of purchase was induced by the false and fraudulent representations of the vendor, and, further, that it is insufficient to support the judgment that was rendered.

*Error from Atchison District Court.*

This is a part of the litigation which was before the court in *Courtney v. Staudenmayer,* and the facts out of which it arose are largely set forth in that case, to which reference is made (ante, p. 392). It was originally an action of partition between R. B. Drury, Charles J. Drury, and Robert McCrie, as plaintiffs, and L. R. Staudenmayer, sr., L. R. Staudenmayer,

jr., and three tenants, as defendants, and was insti-
tuted on July 8, 1887.

The plaintiffs claimed to be the owners of an undi-
vided one-half of the land, and that the Staudenmay-
ers owned the other undivided one-half of the same.
Maria L. Courtney became a party to the action, and
set up a mortgage executed by L. R. Staudenmayer,
sr., to William C. Courtney on July 17, 1858, and
asked for a foreclosure of the same.    The plaintiffs,
as well as L. R. Staudenmayer, sr., averred in appro-
priate pleadings that the mortgage debt had been
paid, and that the mortgage was not a lien upon the
land.    On March 27, 1890, a trial of the cause was
begun before Hon. Robert M. Eaton, district judge ;
but it had not proceeded far before the plaintiffs
asked and obtained leave to file an amended and sup-
plemental petition, which caused a continuance of that
branch of the case until the following term.    A trial
of the issue with respect to the validity and payment
of the mortgage was allowed to proceed as between
Maria L. Courtney, executrix, and her codefendants,
the Staudenmayers, and the court found and adjudged
that the mortgage debt had been fully paid and dis-
charged, and that the mortgage constituted no lien
upon the land.    Upon a review, that judgment has
been affirmed.  (*Courtney v. Staudenmayer*, supra.)

The amended and supplemental petition filed by the
plaintiffs alleged the purchase of the land from L. R.
Staudenmayer, sr., the existence of the mortgage
thereon executed by L. R. Staudenmayer, sr., to Will-
iam C. Courtney, on July 17, 1858, and that L. R.
Staudenmayer, sr., at the time of the sale of the land
to Drury, represented that the Courtney mortgage
had been fully paid and satisfied, and should have
been so entered of record, but from oversight it had

not been done. It was further averred that R. B. Drury, believing the representations to be true, purchased the interest of L. R. Staudenmayer, sr., in the property for $15,300 and made a payment of $2,500 upon the same. For the unpaid purchase-money R. B. Drury and his wife executed promissory notes, secured by a mortgage upon the same property, and subsequently R. B. Drury conveyed to C. J. Drury and Robert McCrie each an undivided one-third interest in the real estate purchased from L. R. Staudenmayer, sr., and each in turn assumed one-third of the mortgage indebtedness due from R. B. Drury and wife to L. R. Staudenmayer, sr. It was alleged that C. J. Drury and Robert McCrie purchased the land relying upon the representation that the Courtney mortgage debt had been paid and discharged, and the plaintiffs alleged that they had purchased an interest in the property with a view of subdividing it into small parcels and selling the same for a profit. They further averred, that they had promptly instituted the proceeding in partition, but that it had been delayed by the claim upon the Courtney mortgage, which appeared to be in full force and effect as a lien upon the land. They alleged that they had made a demand upon L. R. Staudenmayer, sr., that he should satisfy the claim or cancel the contract of sale and the accompanying papers, but that he still persisted in claiming that the mortgage had not been for many years a lien or incumbrance upon his interest in the land conveyed by him to R. B. Drury, and he promised speedily to have the controversy relating thereto settled and determined. They averred that he had failed to take any steps to settle the controversy, that it had become further involved by a claim of an attorney's lien thereon, and the property had been greatly

26—56 KAS.

depreciated in value during the delay, so that the land was not available for the purpose for which it was purchased, and, therefore, that they were entitled to rescind the contract. To that end they tendered deeds duly executed releasing their interest in the real estate, and asked the court to decree the contract of purchase canceled and annulled, and the notes and mortgage executed by R. B. Drury and wife to be adjudged null and void, and surrendered into court; and further, they asked to recover a judgment against L. R. Staudenmayer, sr., for the sum of $2,500, with interest thereon.

L. R. Staudenmayer, sr., answered, setting forth the notes and mortgage executed by R. B. Drury and wife, asking for a personal judgment against them in the sum of $12,800, and for a judgment against Charles J. Drury and Robert McCrie, each for one-third of the mortgage debt, it being alleged that each had assumed the payment of one-third of the same, and for a decree of foreclosure. He also asked that Anna M. Drury should be made a party to the action, in order that his rights might be made complete. In a supplemental answer filed by L. R. Staudenmayer, sr., on June 24, 1891, he alleged that on November 29, 1890, it had been duly determined in that court that the Courtney mortgage had been fully paid, satisfied, and discharged, and that the judgment was then in full force and effect.

Replies were filed and the issues closed. A trial was had before the court without a jury. Conclusions of fact and of law were filed on July 11, 1891, in which the court found that the Courtney mortgage was duly executed and recorded, and was still unsatisfied on the record; that no payment upon the notes secured thereby had ever been made, except three small inter-

est payments made in 1860, which were indorsed on
the notes.    It was also found that, at the time of the
purchase, L. R. Staudenmayer, sr., represented to R.
B. Drury that the Courtney mortgage had been paid;
that he had paid it, and that he had a receipt or
something to show payment among his papers.    It
was further found, that by reason of the misrepre-
sentations and misconduct of L. R. Staudenmayer, sr.,
the contract of purchase should be rescinded, and it
was so adjudged.    The plaintiffs were required to
convey the property to L. R. Staudenmayer, sr., and
the notes and mortgage executed by R. B. Drury and
Anna M. Drury were annulled and canceled; and the
court further gave judgment to the plaintiffs against
both of the Staudenmayers for the sum of $2,965.79,
that being the amount of the payment made by R. B.
Drury to L. R. Staudenmayer, sr., together with the
interest thereon.    Staudenmayer complained of these
rulings, and, after having brought the case to this
court for review, he died, and since that time the
proceedings have been revived in the name of B. C.
Wood, administrator of the estate of the deceased.
The opinion herein was filed February 8, 1896.

   *C. D. Walker*, and *J. L. Berry*, for plaintiff in error;
*Waggener, Horton & Orr*, of counsel.
   *W. W. & W. F. Guthrie*, for defendants in error R.
B. and Chas. J. Drury and Robert McCrie.

The opinion of the court was delivered by

   JOHNSTON, J. :    A question of jurisdiction has been
presented, based on what is alleged to be the absence
of necessary parties.    It is contended that the pres-
ence of  L. R. Staudenmayer, jr., and  Anna  M.
Drury is necessary to a review of the case, and that

their absence compels a dismissal. Although no personal judgment was sought against L. R. Staudenmayer, jr., the court for some reason rendered a joint judgment against him and his father, who is designated as "Doctor Staudenmayer," for $2,965.79, and it is therefore clear that he is a necessary party to the proceeding. He was not served with summons, nor was a formal entry of appearance made in his behalf until more than a year after the final judgment was rendered. It appears, however, that the case-made was served upon him as the law requires, and that in good time his attorneys executed a written waiver of summons and delivered the same to the attorney of plaintiffs in error, who forwarded the same to the clerk of the supreme court. If it was ever received, it cannot be found among the records of the court. Under these circumstances we think he was a party to the proceeding from the beginning.

1. Case-made—written waiver of summons, lost.

Anna M. Drury was a party to the notes and mortgage decreed to be canceled, and although Doctor Staudenmayer sought to recover a judgment against her upon the notes, the judgment of the court was that she be discharged from all liability on both notes and mortgage. If she was a party in the district court, her presence here is undoubtedly necessary to a review. She was not mentioned as a party in the title to any of the pleadings in the case, nor was there any order of the court obtained expressly directing or allowing her to become a party. When Doctor Staudenmayer set up the Drury notes and mortgage he asked that she be made a party, and in the reply, which was filed a few days later, there is the following language: "Further replying herein, these plaintiffs, and said Anna M. Drury joining herein, and as the wife of said

R. B. Drury, having no other interest in the subject-matter thereof, say,'' etc.   The counsel signed this pleading as ''plaintiffs' attorneys.''   In the judgment, the court adjudges the annulment of ''the three several notes executed by the plaintiffs R. B. Drury and Anna M. Drury,'' which were secured by by a mortgage ; '' that the said notes, and each thereof, and the said mortgage, each as the obligation of the said defendants R. B. Drury and Anna M. Drury, as also any liability on account thereof of the other defendants, C. J. Drury and Robert McCrie, be canceled.''   The majority of the court are of the opinion that, as no leave was obtained from the court to make her a party, and that as she did not sign any of the pleadings as plaintiff or defendant, and no attorney expressly signed for her, she cannot be regarded as a party in the trial court, and therefore her presence is not necessary

2. Review—not a necessary party.

here.   It is the view of the writer that, when she was joined in the reply with plaintiffs, she became a party plaintiff, and that the attorneys who signed the reply signed for her as well as the others.   From that time the parties appear to have proceeded upon the theory that she was a party, and certainly she was regarded to be a party by the court when he relieved her from any liability upon the notes and mortgage, and canceled them.   It follows, from the holding of the majority of the court, that the motion to dismiss the proceeding cannot be sustained.

This brings us to the merits of the case, and we are all united in the opinion that the testimony does not sustain the findings and judgment of the court.   The rescission was sought on the ground of the representations of Doctor Staudenmayer that the Courtney debt had been paid, and that the mortgage given to

secure the same was no longer a lien upon the property. It appears that the representations were not in fact false, and we fail to see that an actual fraud was practiced upon the purchasers. The transaction was had at a time when there was an active demand for real estate, and during what is characterized by the parties as the "Atchison boom." While it lasted, prices of land and lots in and about Atchison were greatly inflated, and the purchasers desired to obtain the land in question to subdivide and sell the same out in small parcels for profit. R. B. Drury went to North Carolina and found Doctor Staudenmayer and purchased his interest in the property for $15,300. The history of the transaction shows that they were eager to obtain the land, and gave the price asked by the doctor with little hesitation. L. R. Staudenmayer, jr., who owned the remaining interest in the property, was in South Carolina, and it is said that the doctor encouraged Drury to believe that his son would sell the remaining interest to him. Before the transfer was made, however, Drury visited the son in South Carolina, who told Drury that he would not sell his interest to him, and that his father was mentally incapable of making a contract or transfer of his interest. Notwithstanding this denial and protest Drury purchased the land, paying $2,500 in cash, and for the balance of the purchase-money gave three separate notes of $4,266.66⅔ each, signed by himself and his wife, and secured by a mortgage on the real estate purchased. According to the testimony, when Drury purchased the property the mortgage stood as an incumbrance on the record title, and, besides, he had actual knowledge of that fact. He concedes that he called the attention of Doctor Staudenmayer to the incumbrance during the first negotiations, but the doctor

told him it had been paid, and should have been discharged.    The doctor insisted then, as he has since that time, both in and out of court, that the debt had been paid, and that no lien actually existed against the land. With full knowledge of the unsatisfied mortgage, Drury purchased the property, and it is difficult to see from the testimony in this record that the purchase was induced by deception or fraud.    The representation said to have been made by the doctor, that he would induce the son to sell his interest, cannot weigh much in this controversy, for the reason that the plaintiffs were well advised before the transfer that the son would not sell his interest, nor consent to a sale of the interest held by the father.    The first negotiation for the land was on April 27, 1887, and the purchase-money was not paid, nor the deeds and mortgages exchanged, until May 6, 1887, when R. B. Drury went to North Carolina and personally attended to the transfer.    It does not appear that when the transfer was made Drury demanded or asked for a written receipt of the payment of the money, nor did he demand the production of a written discharge of the incumbrance.    About two months afterward the purchasers began their action for partition of the property.    Soon after the commencement of that proceeding Maria L. Courtney came into the case, and set up the mortgage of 1858, claiming that it was an incumbrance upon the property, and asking for a foreclosure of the same.    The mortgage was resisted alike by Doctor Staudenmayer as well as the purchasers, each alleging that it had been paid and satisfied.    Notwithstanding this claim and the open manner in which it was made, no charge of fraud was made against Doctor Staudenmayer, nor was rescission asked for by the purchasers until March 27, 1890,

when the amended and supplemental petition was filed. Although the controversy in the litigation had continued for nearly three years, and although the purchasers appear to have possessed full knowledge of the situation, no complaint had been previously made that the purchase was induced by misrepresentations. The facts that partition was delayed and the litigation concerning the same protracted afford no grounds for rescission. The rule is, that the right to disaffirm a contract for fraud must be exercised promptly after its discovery. (*Bell v. Keepers*, 39 Kan. 105.)

We are inclined to the view that the testimony fails to show that the purchasers were misled or induced to purchase by reason of the false representation of any material fact. A rescission of the contract and the cancellation of the convey-

3. Fraud—land contract—rescission.

ances is an extraordinary power of equity, and should not be exercised unless it is clearly established that the representations were false or fraudulent, and that they were relied on by the purchasers. It appears that the statements of Doctor Staudenmayer with respect to the payment and satisfaction of the Courtney mortgage were in fact true. He asserted it to the purchasers, alleged it in his pleadings, and it has been established by a judgment of the trial court which has just been affirmed in this court. The findings of the court respecting the Courtney debt and mortgage are strangely inconsistent, and are another reason why the judgment should be set aside. Special findings of fact and of law were made in the trial of the issue respecting the Courtney debt and mortgage, and they are embraced in the record of this proceeding. In the first the court held that the debt was paid and the lien discharged, while in the second set of findings, upon another issue in the same case and sub-

stantially upon the same testimeny, the court, in effect, found that the mortgage debt had not been paid.     This was one of the controlling considerations in the judgment of rescission.     It may be remarked here that the court found that on July 8, 1887, R. B. Drury received one-half of an award of damages allowed for the establishment of a highway over the land, in the sum of $75, and on April 12, 1888, he received one-half of an award of $50 for the establishment of another highway over the same land.     Taking the testimony of the admitted knowledge of the parties with respect to the incumbrance, their conduct in the negotiations and the litigation, and the long delay in asserting that the purchase was induced

4. Findings, not sustained. by misrepresentation and fraud, we think the testimony fails to show any grounds for rescission, and that the findings and judgment are unsupported by the testimony.

The judgment will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.